**MONTGOMERY ACADEMY, Plaintiff,**

v.

**Carolyn KOHN, et al., Defendants.**

**No. CIV. A. 98–4013 (JCL).**

United States District Court,
D. New Jersey.

Dec. 30, 1999.

Diane K. Weeks, Mendham, NJ, for plaintiff.

Jeffrey P. Resnick, Sherman Silverstein Kohl Rose & Podolsky, Pennsauken, NJ, for Carolyn Kohn, defendant.

S. Nina Gellert, Nourse and Bowles, Milburn, NJ, for Adolph Singer, M.D., defendant.

Rick A. Garcia, Clifton, NJ, for Charles Genovese, defendant.

Neil Wager, Garden City, NY, pro se.

Francis J. Leddy, Jr., Verp, Leddy & Ranieri, Wayne, NJ, for Ronald Levin, Dennis Bartlett, Genovese & Co., Genovese, Levin & Bartlett, defendants.

Michael Samuel Bubb, Morristown, NJ, for Randles S. Needham, Needham & Bordino, LLC, defendants.

Paul J. Fishman, Friedman Kaplan & Seiler LLP, Newark, NJ, for Dennis Scott Mair, Alvin Rapp, defendants.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Presently before the Court are plaintiff's appeal of Magistrate Judge Chesler's May 24, 1999 order disqualifying Diane K. Weeks, Esq., as counsel for plaintiff and plaintiff's motion to vacate the Magistrate Judge's order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Local Civil Rule 83.3. For the reasons set forth herein, the decision of the Magistrate Judge will be affirmed and plaintiff's motion to vacate the order will be denied.

## BACKGROUND

Magistrate Judge Chesler heard oral argument on the motion of defendant Carolyn Kohn ("Kohn") to disqualify Diane K. Weeks ("Weaks") as counsel for plaintiff Montgomery Academy ("the Academy" or "the school") on January 11, 1999 and held an evidentiary hearing on March 15, 1999.

Magistrate Judge Chesler found that on June 17, 1996 Weeks and Kohn agreed that Weeks would represent the school to negotiate its lease renewal, but there was no letter of retention or other written agreement to that effect. Weeks informed Kohn that the Academy's Board of Directors ("the Board") would have to vote to retain her on their behalf before she would be officially hired. On June 27, 1996, Kohn called Weeks to discuss her discovery that the school's pension plan money may have been lost in "Hemlock Investments," a "Ponzi Scheme." Kohn and Weeks spoke on June 28, 1996 and Kohn told Weeks what had transpired. They met two days later, on June 30, 1996, at Weeks' house. Kohn shared with Weeks what she had learned about the Hemlock Investments ("Hemlock") and they listened to an audio tape that Kohn had made of a Hemlock meeting on June 27, 1996. Kohn shared with Weeks her knowledge, feelings, concerns, and worries about the investment scheme.

The Magistrate Judge found that at this time and in the days to follow, Kohn reasonably considered Weeks to be her personal lawyer and thought that Weeks would protect her interests. They met several times and discussed the pension plan problem and discussed the possibility of Weeks representing both Kohn and the Academy. On July 8, 1996, the Board of the Academy met and considered hiring Weeks as counsel. Weeks was later hired and has since represented the Academy in

this lawsuit against Kohn and others, which was filed in August 1998.

After hearing testimony regarding the June 30, 1996 meeting between Weeks and Kohn, Magistrate Judge Chesler found that an implied attorney-client relationship existed. The Magistrate Judge found that Kohn reasonably believed that Weeks would represent her or her and the Academy jointly, based on Kohn's view that her interests and the Academy's interests were aligned. Magistrate Judge Chesler also had "no doubt that confidential information was provided to Weeks by Kohn indicating that Kohn had potential liability for, at the least, nonfeasance for failing to exercise her fiduciary obligations." ·In support of that finding, the Magistrate Judge highlighted a "to do" list created by Weeks and Kohn during the June 30, 1996 meeting that referenced Kohn's personal investments, Kohn's personal insurance policy, and documents which related to Hemlock that Kohn and Weeks needed to review. Magistrate Judge Chesler found that the evidence "clearly shows that Kohn's personal concerns were, at a minimum, discussed and considered by Kohn and Weeks during the meeting."

Based on the testimony at the evidentiary hearing, the Magistrate Judge found that Weeks' claims that she told Kohn that she represented the Academy only and could not represent Kohn "ring hollow." The Court determined that Weeks needed Kohn's support to be hired by the Board and that Weeks could not have felt that she represented the Board prior to the July 8, 1996 Board meeting. The Court found that Weeks' own testimony that she told Kohn that she "might need separate counsel" or should retain "new" counsel indicated that an attorney-client relationship had indeed existed between Weeks and Kohn.

Magistrate Judge Chesler found that Weeks should have been aware that there was an inherent conflict between Kohn and the Academy such that she could not represent either of them. The Court conclud-ed that Weeks "was not free, under the applicable ethics rules and decisions, to accept this [confidential] information, choose which client to represent, and then to utilize the information against one of the two prospective clients."

Based on the certifications submitted by the parties and the testimony at the evidentiary hearing, the Magistrate Judge found: (1) An implied attorney-client relationship existed between Weeks and Kohn between June 28, 1996 and July 8, 1996 before Weeks informed Kohn that she was representing the Academy only; (2) Kohn imparted confidential information to Weeks relating to the subject matter of this lawsuit during that relationship; and (3) Rules 1.7(a) and 1.9(a)(1) of the New Jersey Rules of Professional Conduct, as well as state and federal law regarding attorney ethics, precluded Weeks from representing the Academy in this action against Kohn. *See Montgomery Academy v. Kohn,* 50 F.Supp.2d 344 (D.N.J.1999) (setting forth in full the Magistrate Judge's factual determinations and conclusions of law). The Academy made a motion for reargument of the disqualification decision, which was denied by Magistrate Judge Chealer on August 16, 1999.

Plaintiff now appeals the Magistrate Judge's decision to this Court and has also made a motion to vacate the Magistrate Judge's decision under Federal Rule of Civil Procedure ("FRCP") 60(b) and Local Civil Rule 83.3.

### STANDARD OF REVIEW

 A district court may reverse a Magistrate Judge's order only if it finds the ruling clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); *Fed. R.Civ.P.* 72(a); *L. Civ. R.* 72.1(c)(1)(A). The district court is bound by the clearly erroneous rule· as to findings· of fact; the phrase "contrary to law" indicates plenary review as to matters of law. *See Haines v. Liggett Group Inc.,* 975 F.2d 81, 91 (3d Cir.1992). According to the Supreme

Court, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## DISCUSSION

 The New Jersey Rules of Professional Conduct ("RPCs") govern the conduct of attorneys in the United States District Court for the District of New Jersey. *See L. Civ. R.* 103.1(a) (1999). The RPCs prohibit a lawyer from representing a client whose interests are adverse to a current or former client's in the same or similar matter. *See* RPC 1.7(a)("A lawyer shall not represent a client if the representation of that client will be directly adverse to another client"); RPC 1.9(a)(1) ("A lawyer who has represented a client in a matter shall not thereafter ... represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client."). The ethics rules also require an attorney who has represented two clients whose interests become adverse to abstain from representing either of them. *DeBolt v. Parker*, 234 N.J.Super. 471, 484, 560 A.2d 1323 (Law Div.1988) ("When an attorney represents potentially and foreseeably adverse interests ... and the adversity becomes actual, counsel must withdraw from any representation of both parties and all fees may be forfeited.") (construing RPC 1.8(i)).

### 1. Joint Representation

 Plaintiff argues that the Magistrate Judge erred in finding that Weeks undertook what she calls "an 'implied' joint personal and corporate representation" of Kohn and Montgomery Academy. Plaintiff argues that the Third Circuit's decision in *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120 (1986), forbids finding an implied personal representation of a corporate officer in a corporate setting absent specific proofs of personal representation.

Plaintiff's reliance on *Bevill, Bresler* is misplaced. *Bevill, Bresler* dealt with corporate officers trying to prevent disclosure of corporate communications with corporate counsel after the corporation had waived the attorney-client privilege and also trying to assert the "joint defense" privilege. *See* 805 F.2d at 124. The Third Circuit focused on whether the officers' communications regarding corporate business were privileged as to third parties when the corporation had already waived the privilege. *See id.* The court found that communications to counsel by the officers prior to retention of the law firm by the corporation were privileged, but those made after retention by the corporation may not have been privileged once the corporation had waived the privilege. *See id.* at 125.

Unlike the present matter, the *Bevill, Bresler* court made no finding that an attorney-client relationship existed at any time between the individuals and the law firm that became corporate counsel. By contrast, Magistrate Judge Chesler found that Kohn had sought out Weeks for personal legal representation and communicated to her confidential information in the weeks prior to Weeks' retention by the Academy as its counsel. If anything, *Bevill, Bresler* supports Kohn's claim that statements she made to Weeks prior to Weeks' formal retention by the Board are privileged. Furthermore, there was no suggestion in *Bevill, Bresler* that the corporate attorney would be able to use the individuals' statements to him against them in any legal proceedings. Rather, Magistrate Judge Chesler noted that the *Bevill, Bresler* attorney would likely be barred by RPC 1.9 from representing the corporation in a matter adverse to the officers.

Plaintiff devotes a great deal of its brief to arguing that any confidential communications that Kohn made to Weeks are no

longer privileged because the information has since been revealed to the Board, to employees, or to the public through the recent *filing* of a legal malpractice action against Weeks, Plaintiff misreads Magistrate Judge Chesler's opinion. It is immaterial whether the confidential communications are still privileged from disclosure. Rather, it is the fact that any such communications were made during the attorney-client relationship between Weeks and Kohn that requires Weeks to be disqualified. It is the existence of the attorney-client relationship with Kohn that, under the RPCs, disqualifies Weeks from representing the Academy in a case in which the Academy's interests and Kohn's interests are materially adverse.

Plaintiff also selectively reads this Court's opinion in *Twin County Grocers, Inc. v. Vitale*, 98–186(JCL) (D.N.J. Dec. 30, 1998) (unpublished), as requiring Kohn to produces " 'specific evidence' of a joint implied representation." What this Court said in Twin County was that an individual asserting dual representation by a corporate attorney "bears the burden of identifying specific evidence that demonstrates the existence of an express or implied attorney-client relationship, *or his reasonable belief that a personal attorney-client relationship was established.*" Twin County, slip. op. at 9 (emphasis added). Magistrate Judge Chesler applied that standard and found that Kohn had a reasonable belief that a personal attorney-client relationship was formed between Weeks and herself prior to the Board's retention of Weeks as its attorney. It is the existence of this relationship that requires Weeks to be disqualified from representing the Academy in a matter directly adverse to Kohn's interests.

### 2. Evidentiary Hearing

Plaintiff argues that the Magistrate Judge erred first by holding an evidentiary hearing at all and second by preventing Weeks from cross-examining Kohn as to the content of the confidential communica-

tions made between June 28 and July 8, 1996. Further, plaintiff argues that the privilege as to any such communications has been waived because Kohn has recently filed a malpractice lawsuit against Weeks.

██ Whether or not to convene an evidentiary hearing on a contested issue is wholly within the discretion of a Magistrate Judge hearing a motion. *See L. Civ. R.* 72.1(a)(1), (3). Plaintiff points out that in the Magistrate Judge's proceedings in *Twin County*, he chose not to hold an evidentiary hearing. The fact that the Magistrate Judge chose to hold an evidentiary hearing in a factually different case to assess witness credibility does not suggest error; it is an exercise of the court's discretion. *See Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 222, 536 A.2d 243 (1988).

Plaintiff claims that once the court ordered an evidentiary hearing regarding the existence of prior representation, the New Jersey Supreme Court's opinion in *Dewey* and this Court's opinion in *Essex Chem. Corp. v. Hartford Accident & Indemnity Co.*, 993 F.Supp. 241 (D.N.J.1998), required complete disclosure of client confidences. Those cases stand for no such proposition. Rather, they stand for the proposition that courts should assure strong protection from disclosure for a client's confidences and that any disclosure should be a "last resort." *Dewey*, 109 N.J. at 223, 536 A.2d 243; *Essex Chem.*, 993 F.Supp. at 250.

██ Plaintiff argues that she should have been given a fuller opportunity to cross-examine Kohn as to the confidential nature of any communications Kohn made to Weeks from June 28 to July 8, 1996. Plaintiff claims that the communications were not confidential. As the court noted in *Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.*, 903 F.Supp. 253, 259 (D.P.R.1995), "the definition of 'confidential information' for the purposes of a disqualification motion is information that if

revealed could put the plaintiff at a disadvantage or the other party at an advantage." Based on the certifications from the parties and testimony during the evidentiary hearing, Magistrate Judge Chesler accurately concluded that confidential information was communicated by Kohn to Weeks during the period in question and that the information communicated would give one party an advantage over another. His determination that confidential information was communicated is supported by the record and is certainly not clearly erroneous. His limitation of cross-examination was designed only to avoid full disclosure on the record of the information he had found to be confidential.

■ Plaintiff also raises a waiver of privilege argument, claiming that by recently filing a malpractice action against Weeks in state court, Kohn has waived the privileged nature of her communications to Weeks. Plaintiff's argument is a non sequitur and reflects a misunderstanding of either Magistrate Judge Chesler's decision or of the attorney-client privilege in general. First, Magistrate Judge Chesler's decision did not turn on whether the attorney-client privilege endures. Rather, it turned on the fact that because an attorney-client relationship existed, and because confidences were communicated by client to attorney, Weeks is barred by the RPCs from representing the Academy in a matter adverse to Kohn's interests concerning the same subject matter. It is the fact of the representation that creates the conflict. Second, the "self-defense" exception to the attorney-client privilege is wholly inapplicable to the present matter. The exception allows counsel to waive a client's privilege when necessary in order to defend herself against accusations of wrongful conduct. See George v. Siemens Indus. Automation, Inc., 182 F.R.D. 134, 139 (D.N.J.1998). The exception applies only to the action filed by the client against the attorney. Weeks is not defending herself in the present matter. Invocation of the self-defense exception to

the attorney-client privilege is unwarranted.

### 3. "Subjective" Relationship

■ Plaintiff argues that the Magistrate Judge erred by finding that an implied attorney client relationship existed based on Kohn's "subjective view." Magistrate Judge Chasler made no such finding. Rather, as discussed above, based on his evidentiary findings, Magistrate Judge Chesler specifically determined that Kohn's belief that Weeks was her attorney was reasonable. Reasonable belief is the proper legal standard for assessing whether an implied attorney-client relationship existed. See Sheinkopf v. Stone, 927 F.2d 1259, 1265 (1st Cir.1991). Magistrate Judge Chesler's determination was not contrary to law.

### 4. "Generally Known" Information & "Waiver"

Plaintiff argues that the Magistrate Judge erred in finding that Kohn communicated private and confidential information to Weeks. Plaintiff argues first that any information communicated by Kohn has since become "generally known" or that the attorney-client privilege has been waived. As discussed above, such arguments are immaterial to whether an attorney-client relationship existed between. Weeks and Kohn for the period of June 28 to July 8, 1996 and whether privileged information was then communicated.

■ Plaintiff further argues that defendant waived the right to disqualify Weeks by felling for two years to assert that a conflict of interest existed in Weeks' representation of the Academy in its lawsuit against Kohn. However, the cases in which an undue delay was deemed to be a waiver of the conflict objection involved parties seeking to disqualify an attorney long after the litigation was commenced. See Alexander v. Primerica Holdings, Inc., 822 F.Supp. 1099, 1115–16 (D.N.J.1993)(motion to disqualify counsel made more than three years into case

what plaintiff knew from the time complaint was filed of counsel's alleged conflicts); *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1208–09 (E.D.Pa.1992)(two-year delay); *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983)(two-and-one-half year delay); *Central Milk Producers Co-op. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992(8th Cir.1978)(over two-year delay); *In re Zimmerman,* 81 B.R. 296, 300–01 (E.D.Pa.1987)(almost three-year delay); *Warpar Mfg. Corp. v. Ashland Oil, Inc.,* 606 F.Supp. 852, 858–59(N.D.Oh.1984)(delay of one year and nine months); *Glover v. Libman,* 578 F.Supp. 748, 767 (N.D.Ga.1983)(delay of thirteen months); *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032, 1034–35(N.D.Ga.1981)(delay of fifteen months). Kohn's motion to disqualify plaintiff's counsel was made less than three months after the suit was filed and soon after defendants filed their answer to the complaint. During the two-year "delay" asserted by plaintiff, there was no lawsuit to which Kohn could object. Kohn had no practical forum in which to assert Weeks' conflict of interest before she actually became the target of plaintiff's lawsuit. The three-month time from filing of the lawsuit to filing of the disqualification motion does not approach the magnitude of delay required by the case law to find a waiver of the objection.

### 5. Judicial Estoppel

Plaintiff claims that the Magistrate Judge erred by failing to find that Kohn demonstrated bad faith by arguing alternatively that Weeks was solely her personal lawyer during the June 28 to July 8, 1996 period and that Weeks undertook dual representation. The Magistrate Judge rejected plaintiff's argument that Kohn should have been judicially estopped from asserting differing theories. Magistrate Judge Chesler correctly noted in his opinion rejecting plaintiff's motion for reargument that judicial estoppel is an extraordinary remedy that is only rarely to be invoked when other sanctions will not suffice. Under either the dual-representation or the purely-personal theory, the relevant facts determined by the Magistrate Judge are that Weeks and Kohn had an attorney-client relationship during the period in question and that confidential communications were made by Kohn to Weeks in reasonable reliance on that relationship. Thus, plaintiff can demonstrate nothing in the allegedly inconsistent theories that could constitute playing fast and loose with the courts and warrant invoking judicial estoppel.

### 6. Appearance of Impropriety

Plaintiff argues that Magistrate Judge Chesler improperly disqualified Weeks from representing the Academy because he found an appearance of impropriety under RPC 1.7(c)(2). Plaintiff has misread the Magistrate Judge's opinion. Magistrate Judge Chesler never mentioned RPC 1.7(c)(2) or the "appearance of impropriety" standard in either his opinion disqualifying Weeks or in his opinion denying plaintiff's motion for reargument.

### 7. Factual Determinations

Plaintiff asserts that the Magistrate Judge's determination of the facts at issue in the disqualification motion were clearly erroneous. In support of that argument, plaintiff has provided the Court with multiple certifications from Weeks offering a differing interpretation of the facts. These certifications include selections from the testimony elicited at the evidentiary hearing conducted by Magistrate Judge Chesler and offer Weeks' own interpretation of that testimony as an alternative to the fact-finding performed by the Magistrate Judge. The Court has reviewed all of the materials in the record. It also has carefully reviewed Magistrate Judge Chesler's determinations as to the facts and considered his first-hand assessment of the credibility of the witnesses who testified before him. The Court finds that Magis-

**320**

trate Judge Chesler's factual determinations were not clearly erroneous.

### 8. *FRCP 60(b)/L. Civ. R. 83.3 Motion*

 Concurrent with the appeal of the Magistrate Judge's order disqualifying Weeks as counsel for the Academy, plaintiff has filed a motion styled as "Motion to Vacate" the Magistrate Judge's order pursuant to FRCP 60(b) and Local Civil Rule 83.3. As a preliminary matter, the Court believes that the plaintiff should have made any motion to vacate the Magistrate Judge's Order before the Magistrate Judge himself.

FRCP 60(b) allows the Court to provide relief from an Order to avoid mistake, to combat fraud or misconduct, in the event of "newly discovered evidence which by due diligence could not have been discovered," and for "any other reason justifying relief." *See Fed.R.Civ.P.* 60(b). Local Civil Rule 83.3 allows the Court to "proceed in any lawful manner" in order to serve justices and fairness "in the absence of any governing rule and/or if no procedure is especially prescribed." *See L. Civ. R.* 83.3. Additionally, plaintiff argues that Local Civil Rule 83.2 allows the Court to consider new evidence not part of the Magistrate Judge's record when considering such a motion. *See L. Civ. R.* 83.2. Alternatively, plaintiff urges that this Court could act pursuant to Local Civil Rule 83.1 and Rule 10(c) of the Federal Rules of Appellate Procedure to reopen consideration of the issue and to supplement the record with additional certifications from plaintiff.

Plaintiff had a full opportunity before the Magistrate Judge to oppose defendant's motion to disqualify Weeks. Plaintiff submitted a memorandum of law and certifications of factual matters to the Court. The Magistrate Judge heard oral arguments from both sides and conducted an evidentiary hearing. Plaintiff also made a motion for reargument before the Magistrate Judge, which was supported by memoranda of law and certifications of

facts. Plaintiff has appealed the Magistrate Judge's decision to this Court and has likewise submitted memoranda of law and multiple certifications of facts in support, This Court has fully reviewed all the materials in the record. Plaintiff has presented no new evidence in conjunction with its motion to vacate that was not available to it previously. The Court is satisfied that the plaintiff has had its day in court on the attorney disqualification issue and sees no reason to reopen the record or to vacate the order. Accordingly, the Court will deny plaintiff's motion to vacate the Magistrate Judge's order.

### CONCLUSION

After having reviewed Magistrate Judge Chesler's opinion and all materials in the record, the Court is satisfied that the Magistrate Judge's determinations that an attorney-client relationship existed between Weeks and Kohn and that Kohn communicated confidential information to Weeks in reasonable reliance on that relationship were not clearly erroneous. The Court also finds that Magistrate Judge Chesler's determination that the RPCs and case law require Weeks to be disqualified as plaintiff's counsel was not contrary to law.

Accordingly, **IT IS** on this *30th* day of December 1999 **ORDERED** that Magistrate Judge Chesler's May 24, 1999 order disqualifying Diane K. Weeks as plaintiff's counsel is hereby affirmed and plaintiff's motion to vacate the order is denied.